Welcome to the Ninth Circuit. We're ready to hear this argument virtually and we'll call the case. It's Pinson v. Carvajal, case number 21-55175. And we'll hear first from Mr. Rowe, I think. Thank you very much. And may it please the court, Mr. Rowe and Ms. Pinson. I would like to reserve three minutes of time for rebuttal and I will try to watch the clock. This is a case about two federal prisoners who sought release from prison due to the Eighth Amendment violations they allege. Under the 1973 Supreme Court decision in Prizer v. Rodriguez, they must seek relief through habeas and they may not seek release through any other vehicle, such as Section 1983 or any potential federal analogs. Yet, the two district courts here held that they lacked habeas jurisdiction and that the petitioners had to proceed through other vehicles, vehicles that Prizer precludes. Before we get into the merits, what about the mootness argument? Because she was in Victorville when she filed this and she's since been transferred, isn't that right? Like multiple times. That is correct, several times. And so why isn't the case moot? Because as I understand it, I mean, if it, assuming we treat it as a habeas case, setting aside whether we have jurisdiction over that, you can only get relief for the confinement that you're currently in. And she's sued under the status of confinement in Victorville. Right, Your Honor. So I have two responses to that first. And I want to be very clear about this. The Sands case is not moot because there is no transfer. So we're only talking about Ms. Henson when we're addressing the mootness issue. So with that preface, I will say that it is true that you are correct that if there is a transfer, a case is ordinarily moot. There is an exception for capable of repetition of evading review or voluntary cessation of illegal activity. And I would Are you arguing for that exception to apply here or for Pinson? This is we're only talking about Pinson, right? Only for Pinson. Yes. The question that I the argument I would put forward for capable of repetition, but evading review or for sending it to the district court so it can find facts that would go to that is this in Olmstead versus LC 527 US 581 note six, the Supreme Court held that shuttling someone between an institutional facility and community care in an ADA case creates capable of repetition but evading review that person had been shuttled a lot. Well, that and that that's what I wanted to and maybe your point about more factual finding because as I understand it, correct me if I'm wrong. Pinson had already she'd already been detained in Arizona, in Tucson. She filed a claim there claim there. It was dismissed as moved because she was then transferred to Victorville. Now she's been transferred from Victorville. She went to like three different places. As I understand it, she's back in Tucson now. That is all right. That is correct. So there's an inference we can we can glean of shuttling of back and forth possibly to evade review. Is that true? I'm with the possibility of finding facts and developing a record. Probably could. So if it weren't for that, I would agree with your honor that the case would likely be moved. But because of that, I want to offer that reservation. And I just point is we have to decide the merits anyway, because of the sands case. And then I'm wondering, you know, I guess now we'll get into the meat of it. You know, did the district court err on this missing for lack of jurisdiction? Because if we agree with the government and the district court that I said government, I guess, not not necessarily or local government. But if we agree with that argument that there's no jurisdiction here, we wouldn't need to reach mootness because we could just dismiss both for lack of jurisdiction by avoiding the mootness question, right? Now, if we found jurisdiction, then we're going to have to address the mootness question. That's correct. But the standard practice under Munsingware is to vacate the decision just to be sure that there were no preclusive effects. In other words, if we found mootness, mootness would prevent any say we're so you're so you're saying so you're saying we would have to decide mootness even before jurisdiction as the pension because we'd have to deal with the Munsingware issue because if we just denied jurisdiction, then we wouldn't have a Munsingware issue. And you're saying we'd have to decide mootness first. Correct. But if you held that there was what is their case law because I thought the case law said as long as you can decide any kind of jurisdictional question up front and I've never seen a hierarchy that says you have to do mootness before jurisdiction. Although this is an article. It's not Article 3 jurisdiction we're talking about. It's it's statutory jurisdiction under the habeas statute, right? Under 2241. That's right. Mootness does go to Article 3. I see. So maybe we do need to do this first. OK. All right. Well, sorry. I just wanted to get that clear in my head. And now go ahead and make your case on on jurisdiction because I had thought I mean, just just to tell you where my concerns are. I had thought that you mentioned the Supreme Court case in Prizer, but I thought that it was pretty clear that where you're challenging conditions of confinement that did fall into the 1983 bucket. And, you know, the habeas statute was more for challenging the conviction or to say that the confinement couldn't be remedied in any way. That's the Sixth Circuit case in Wilson where they said there's not there's no other changes that could be made to confinement to bring it constitutionally valid. That doesn't seem to be the claim here. You're not claiming that there's nothing that Victorville could do. You were asking for an injunction to force Victorville to impose what you perceive to be COVID safety restrictions. The answer to that, Your Honor, is actually not. No. Two points I want to make in response to that. The first is Prizer. Prizer doesn't have an exception for why you want release if what you are seeking is immediate release or speedier release, then it holds that habeas is the mandatory path. You cannot use Section 1983 or Bivens or the APA or any alternatives. But how do we decide if the only remedy is release? Is it based on the petitioner's allegations or can we look at the face of the petition, as Judge Nelson noted, and see that there's been a request for injunctive relief and there are very specific challenges to, I believe in Mr. Sand's case, 13 conditions within confinement, all of which on their face could be remedied by a judicial mandate or by transfer. Is this a situation where the petitioner is essentially the master of the or if we conclude that in a matter of law, release is not the only remedy, then this is not a habeas petition. Yes, Your Honor. So the answer to that question is first, we look at what the petitioner says in his petition. And in Mr. Sand's case, he said exactly what the petitioners said in Williams in the Sixth Circuit. He said, quote, no set of conditions under the present circumstances could be constitutional. He said he was challenging in his reply, the fact and duration of confinement and the remedy. But is there any limiting rule? I mean, that would mean that anytime a petitioner alleged that the only remedy is my release, it would have to be treated as a habeas petition. And that's so to avoid, you know, or PLRA requirements, three strikes, exhaustion, all sorts of things, ways that that petitioners would want to manipulate, whether this is a habeas petition or some other type of claim for relief. So how can it just be based on the allegation? I mean, we have to have some limiting factor, don't we? Your Honor, no, I don't think you do. The question is what remedy is the petitioner asking for? And the reason for that is because, as you noted, a plaintiff or a petitioner is master of his or her complaint. It goes to the distinction between jurisdiction and merits. And I can give you two really telling examples of why that's the case. The first one is the Supreme Court's decision in Bell versus Hood from 1946. Let's say I state a federal claim. And my opponent says, oh, come on, that's outlandish. There has to be a limiting principle. This should be re-characterized. Well, counsel, there's a huge elephant in the room in that EPA and the PLRA were enacted decades after the case you're discussing. And so they are present and congressional intent to agree with it or not. And so it seems that there has to be something beyond the prisoner's ability to dictate whether it's a habeas petition or a civil rights claim or some other form of a claim of relief. And you're saying, no, it's just based on what the petitioner says. And to me, that suggests there's absolutely no limits to curb any potential abuse. Well, it's just like if I make an outlandish federal claim and it would be better presented as a state claim, I'm likely to lose on the merits, but I still have federal jurisdiction. The other side can't re-characterize my claim and say, oh, come on, you don't belong in federal court. You're better off with a trespass claim. So doesn't that then result in a complete end run around EPA and the PLRA? I mean, whether the claim has merit or will succeed or not, then the petitioner can avoid paying a filing fees. If for example, they're subject to the three-strike rule, they can avoid exhaustion. They can just make those statutes irrelevant. They're basically non-existent if they can just make it a habeas petition. I mean, there are other things that come into play like a second successive petition rule, but meanwhile, they can just, if it's more advantageous for them for various procedural reasons to have this be a habeas petition, they just make the allegation there's no other form of relief, whether that's true or not. And we have to treat it as a habeas petition? Yes, because the first, the PLRA doesn't apply to habeas petitions. And second, look, if I am going to make a habeas petition. Well, that's the point, right? I understand the PLRA doesn't apply. And so the whole point of abusing or manipulating your pleading would be to avoid it, right? So you're advocating a rule that would just allow petitioners to avoid statutory constructions that would otherwise apply. Because the stronger the medicines sought, the harder it is to get a prescription. In other words, if I ask for release, do you know how much harder it is for me to win? It is much more likely that the government would have a really strong 12 v. 6 summary judgment motion. So if I want to allege something that's get me into habeas jurisdiction, I take the risk that I'm weakening my case, it would be easier to ask for an injunction. So the case wouldn't last very long. If in an outrageous case, I asked for that kind of brevity. Can I ask? Oh, go ahead. Did you have something? I see my I just want if there's more questions, we'll we'll give it we'll give you the time. I want to follow up a principle. It seems to me that an allegation that there are no conditions that could be imposed to make confinement constitutional is pretty conclusory. So I'm not sure that just having that sentence would satisfy the requirement, even if we were to adopt a rule, like the Sixth Circuit, doesn't that sort of conclusory statement have to be backed up with facts? Right? You've got to you've got to have some factual discussion in your pleading about why that would be true, that a court could then look at and see is this plausible? Is this, you know, totally fantastical? Is there some limiting principle going on there? Judge Forrest, you just made my point, which is that doesn't go to jurisdiction, that goes to 12 v. 6, that goes to the merits. Under habeas rule 2c, you're correct, you have to plead facts. And if the facts are totally outlandish, this court has held in the Ross case that there's not much. I'm not sure I agree with that. Because I mean, it sounds like your position really is as long as there's that one sentence, there are no conditions that will satisfy the Constitution that you're you're just going to get and then I'm asking for release. That all by is different than that. My question is, just because you have those magic words, if those magic words based on everything else that said are totally outlandish, how can that be that that gets you into habeas land? The same way my saying I have a federal claim under the Securities Act gets me into federal court under section 1331. And makes me vulnerable. No, but you still have but that statement doesn't get you into federal court. You you have to, you have to actually plead allegations that would support that claim. I mean, we don't just take that. I mean, we would read the whole thing on its face. And we wouldn't just say because you pled a state case and said it was federal, a state claim and said it was federal, that's not going to get you there. We'd look and say, well, is it state or is it federal claim you're raising? Your Honor, it would get me 1331 jurisdiction, but would get me dismissed under 12 v six under Iqbal and Twombly. The distinction here is between jurisdiction. And I understand what I understand the distinction you're trying to make. I think you might be overstating it, though, because I don't I don't I don't. I mean, I agree with Judge Forrest question, which is it can't just be the statement because we would if you pled and said, hey, here's a negligence case, but we are you know, we're going to rephrase it as a as a federal case. We look at that as a jurisdictional question. Have you pled federal question jurisdiction or not? And we're not going to let you just recast a state claim as a federal claim. Now, if there's a colorable, I mean, that's that's what we're struggling with here is if there's a colorable claim, I think you're right. And it seems to me that's the question is, do you have a colorable claim or not? I don't want to cut off question if there's more questions from the panel. Well, I have a question. So, Mr. Rowe, you referenced a 12 v six motion to dismiss your failure state of claim. What about a 12 v one motion for lack of jurisdiction, which allows the court to request pass the pleadings, look at the facts. So, you know, the factual dispute, if it goes to jurisdiction, can be resolved in 12 v one. So why is it that just the bare allegation that there's nothing there's no remedy other than release is sufficient to establish jurisdiction? Again, because I'm trying to distinguish between jurisdiction and merits. Jurisdiction depends on what you're pleading. Merits depends on the strength of your claim. Hence, 12 v six would be the way to get rid of a poorly pleaded case like Judge Nelson just offers. And Bell versus Hood from 1946 is about just the scenario with a 1331 claim, a strong state law trespass claim, and a proto Bivens claim 25 years before Bivens, the opposing party said, This is ridiculous. There's no such federal cause of action under the Fourth Amendment. And the court Justice Black said, Well, no, jurisdiction is easy. The merits is where it gets hard. You just have to make the allegation. And let me offer one final point to try to bring this home, which is workability. Remember that habeas under Priser is exclusive. So there has to be a bright line rule. If you ask for release, you are in habeas. Because if your case is about release, you can't file under anything else. And if we allow recharacterization, one would never know if one should file in habeas or in some other civil rights fashion. Okay, yeah, we'll give you a couple minutes for rebuttal. Thank you. Miss Bahadu. Bahadu, thank you. Okay, that's okay. It's not it's a hard one. Good morning, Your Honors. May it please the court. Saria Bahadu on behalf of respondents, Michael Carvajal and the United States. I'd like to start where Judge Nelson started, which is mootness. I just want to make sure that the exceptions that we're talking about are correctly described. And I believe the exception, you'll bear with me for except for a section, which is for a second, excuse me. Well, and while you're looking for that, I mean, my main question was this capable of repetition, but evading review. And I mean, it is this is odd that she started in Tucson. He said, Well, you're not here any longer. So we're dismissing it then gets transferred to Victorville. Well, you're not here any longer. So we're dismissing it and then ends up back at Tucson. It I mean, I'm not sure it gets them there. But it does have a flavor of kind of this ping ponging effect that we ought to look at. What's your position on that? The position is that the exception and this is set forth in Dilley in the court's decision in Dilley is the petitioner has to show that the challenged action is too short if duration is too short in duration to be fully litigated. So the challenged action here are the conditions of confinement. I think petitioner Pinson's point is that the challenged action is actually too long in duration and that she's not happy with her actual conditions as they were at Victorville. And then the second exception the or that petitioners council mentioned is whether there's a reasonable expectation that the injury will occur again. And here the injury is her being subjected to conditions as they were in December of 2021 at USP Victorville. So I understand that. So I mean, just so I understand the government's position here. I mean, would you agree that this ping ponging effect? I mean, say she now maybe she already has brought a new suit in Tucson. This is her second suit in Tucson, you know, and then she gets transferred back to Victorville. Like wait a second. You can't just continue. The government can't continue to moot out these cases by just transferring every prisoner that, you know, files lawsuit. So where's if we're going to roll in your favor, where's the limit? At what point? I mean, are we just giving the government a blank check to transfer everybody before their cases are decided? No, your honor. And, you know, our understanding is that these transfers are done irrespective of whether or not a petitioner fair enough. Fair enough. But the fact of the matter is she she ended up back in Tucson where she'd already filed a suit that had been dismissed because she wasn't there. And now she's saying, well, I'm here again. Well, that's not true of Victorville, but but I'm just trying to understand how this is going to play out. Sure. And I believe she first went to USP Coleman, actually, and she was there in Atlanta, Georgia, in Atlanta, Georgia. And I think that's what I was thinking was first. She was there for some time and then she went back to USP Tucson. But at the end of the day, the law is whether or not it's the challenged action that is the one that's evading review. And the challenge action here is not her transfers. It's it's the fact of the conditions themselves. And so our position, given that the district court here dismissed this summarily and didn't address mootness. Why shouldn't we just have the district court deal with it? I think, well, the summary dismissal claim that's reviewed for abuse of discretion. And and my point is simply that it's not that the district court. Well, one, the district court wasn't looking at mootness and to the district court didn't didn't do much in terms of exploring issues with the party. Didn't do any of that. Right. So with those two things combined, why wouldn't we have the district court step in and address mootness in the first instance? Well, I think and I'll just go back to the standard of the exceptions. I think the standard of the exceptions is whether this challenged action, the conditions of confinement is capable of evading of evading review. And I don't think that that is what Petitioner Pinson is showing. And in addition, I don't think there's any reasonable expectation of her returning to the same conditions as they were in in December of 2021. I think the court can simply apply the conclusion. Do we have to reach mootness before we reach the statutory jurisdictional? We call it jurisdictional question, but it's not. It's not Article three jurisdiction. It's statutory standing, isn't it? I mean, what is it exactly? What is it? If we say it's not habeas, is that it is statutory jurisdiction or statutory standing? My understanding is that it's it's yeah, it's subject matter jurisdiction. Okay, so if that's an Article three jurisdictional question, then we could just decide that before mootness anyway. That's that is our position that the court can essentially dismiss Petitioner Pinson's claims on mootness and then go to the merits as to Petitioner Sanza's claims. And I'm happy to turn to the merits next unless the court has more questions on mootness. So I just want to point out that there is a test for determining whether or not a claim falls within the core of habeas. And these claims do not fall within the core of habeas. In Nettles, the court, the en banc court painstakingly went through Supreme Court decision after Supreme Court decision after Supreme Court decision, including freezer, and found that the test to determine whether or not habeas is your exclusive remedy is if the claims if they're successful on the merits, would they spell speedier release? And the court's correct. It simply does not have to take a petitioner's word for it by looking at one sentence in a habeas petition, especially when here at ER 76, 77 and 80. Petitioner Sanz alleges very specifically four grounds for relief. He alleges that he's not receiving medical care for hypertension, for serious organ failure. He's alleging the failure to implement BOP and CDC policies, including 13 different measures that range from not receiving a flu vaccine to not receiving paper towels, to not screening staff as they're moving through the facility. He alleges the failure of BOP to reduce the inmate population as well as the failure of the BOP to test him. And those claims simply do not challenge the fact or duration. They do not, if he is successful, they would not spell speedier release. They would, as the court found in Crawford, excuse me, be remedied by a judicially. If we ruled in your favor, would we be creating a circuit split with the Sixth Circuit in the Wilson case? I don't think so, your honor. I mean, the first point to that is that this court has already held in Crawford, and this was reaffirmed essentially in Nettles, that this court has long held that conditions of confinement claims do not sound inhabeous. And we believe that the Wilson decision is wrong, but it's also distinguishable. As your honors pointed out there, the petitioner said there were no mitigation measures that could be put in place. And this was after, if you look at the facts in that case, after the BOP had tried to implement multiple policies and procedures. And they said the policies and procedures currently in place are not enough for a medically vulnerable subclass. And then it went to a different subclass that was challenging prison improvements, which is our position is that that's where Sands falls. He would fall in that class that is simply challenging and asking for improvements to his prison facility. And that is not a habeas claim, and that would not create a with Wilson. Hasn't the plaintiff, I mean, one reading of the complaint here though, is that they've basically alleged that. I don't think they actually said there's nothing that can be done, but they've alleged that, you know, it's so bad that we meet, we have to be released. Doesn't that sort of rise to the level of a Wilson allegation of there, you know, there's just nothing that can be done here because they didn't ultimately, the plaintiffs here haven't asked for relief to say, Hey, if you cured these, if we had an injunction on these three, on these 13, at least I don't think so. They've, I don't think they've asked for an injunction to say, you know, cure these 13 things and then, okay, you know, you've cured the violation and I can stay here. So why doesn't that sort of rise to a Wilson, like a separate question of whether Wilson got it wrong, but why doesn't that rise to kind of the Wilson claim, same claim that's made in Wilson? I think it's because SANS is providing the measures that if implemented could cure the problems with this facility. And so in Wilson, I, based on just the underlying briefing, which was, which is what I was able to access is that they were simply alleging, they were not alleging 13 measures that could be implemented to, to mitigate the spread of COVID. They alleged that the policies and procedures that were put in place, and this is only with respect to the medically vulnerable subclass, were not enough. And they, it would essentially, I think they use the words impossible. And that was backed up by their facts. And so going, going back to, so that's the difference here is that, that assuming you were to adopt the Wilson argument that there is some ability to plead this, they just haven't pled here because they needed to plead. You can't, you can't do it. You, there's no way you can rectify these problems. I think that's true. I will say though, we don't agree with Wilson, Wilson in general, but I think if, if the court is looking at as ways, ways to distinguish it, I think that there is, there is a difference between petitioner stands as petition and the medically vulnerable subclass. Doesn't make a difference that the petitioners in these cases are in our federal prisoners, as opposed to state prisoners. So Nettles of course dealt with prisoner in state confinement. And I, as I recall that the court specifically didn't decide whether it's holding that the test you described applies to federal prisoners. I mean, is there some difference because of the statutory framework with 2255 claims and 2241 claims? I don't, I don't think that there is a difference that federal inmates should, should be different than, should be treated differently than, than state prisoners. And I'll direct the court to the Frady decision, which is a Supreme court case from 1982. It's 465 U.S. 152. And there, the court said in no explicit terms, we see no basis for affording federal prisoners a preferred status when they seek post-conviction relief. And that makes sense for three reasons. There's no textual distinction between the statutes 2254 or 2241. And this was in addition to the fact that there's no textual distinction. So there should be no distinction between the scope of the habeas remedy. I'll just point the court to some other reasons why federal inmates should not have a preferred status. And that's because of the PLRA. If federal inmates could simply use, you know, artful pleading tactics, they would find ways to evade the PLRA, which was specifically enacted to govern challenges to prison conditions. And these federal inmates would not be without relief as well. I know that there, there was a lot of discussion in Nettles about how 1983 is, is, is the means for state prisoners to challenge prison conditions, but federal inmates also have a number of options available to them. They can file an injunction, which is what ICE detainees did in Roman v. Wolf under 1331. They could file an injunction under the APA, which is discussed in Salida. They could seek a mandamus from this court. They could, if they're seeking damages, they could file under Bivens or they can file an FTCA claim. So there is a Bivens claim. They would not have a Bivens claim to an injunction, but they would have one for damages. And, and that's what, they would actually have a Bivens claim. I mean, Bivens has been significantly restricted. What, what would their Bivens claim be under the APA? Right. I think the best shot at Bivens would, would, would have to be if they could relate their case to Carson. I know in Ziegler v. Abbasi, the court walked through the different, you know, the new, not new test, but the, the way that the court has curtailed Bivens. And it talks about the three cases really where they have found Bivens relief. And so I think that the petitioner's shot here would be to liken their case to Carson, which is where I think- That was an eighth amendment case. Right. And he was challenging lack of medical care. I want to say, I think he, I think he was looking for a specific treatment and the court said that Bivens was appropriate, appropriate in that setting. That's not to say that, I acknowledge the court's that it has been curtailed, but it is an option in addition to the injunction options, which is what, which is what the petitioners are seeking here. And also what was, what was recognized as an option. To a certain degree, it doesn't really matter because I mean, Congress is within its right to set up whatever relief it wants. And if Congress wants to give more relief to state prisoners than the federal prisoners, I suppose we're not, I mean, clearly they're on two different tracks. Whether there, whether there's equal relief or not, I guess is a separate question. I don't know. Maybe, maybe there would be a claim that it was disparate treatment. I think that's true. I think that that is up to, obviously that's up to Congress when it comes to the fact that they have not passed legislation that's similar to 1983. But at the end of the day, when the courts are interpreting the laws and looking at the glosses that have been put on these laws, at least when it came to the decision in Frady, it was very clear to the court that, that federal courts want their judgments to be, to be upheld and not to be collaterally attacked constantly. So they have an interest to have their post-conviction relief focused and, and limited. And so that's why federal inmates should not have a preferred status over state inmates. Okay. Thank you, counsel. We'll, we'll give Mr. Rowe two minutes for rebuttal. I'm sorry, Judge Nelson. I was trying to ask a question, but I was, Oh, sorry. Go ahead. We're going to, well, that's the nice thing about video. We don't have to bring anybody back up to the podium. No, my fault. I did the classic fail to unmute myself. So I was going to ask counsel about Pfizer and the Supreme Court very clearly there left open the possibility that a challenge to conditions of confinement could in some instances, potentially be a habeas claim, but I haven't been able to find any case where that's happened. And so as I was looking at this case and trying to understand their allegations, it seemed to me that the only way they could maybe get there is if the allegation is that because of, in this instance, the COVID-19 pandemic, incarceration in any form whatsoever, anywhere in any location is unconstitutional. And, and there could, I mean, you could come up, I guess, try to come up with scenarios where that would be the case outside of an infectious disease, maybe the risk of assault or murder or rape in a prison. If someone's a cooperator or perceived cooperator, and they would argue, I can't be confined anywhere at any prison at any institution anywhere in this country because I'm at risk of death. But I haven't seen anywhere where those sorts of claims have been accepted. And that's what I'm struggling with is how do we as apply Pfizer, or is it just, it hasn't been applied? It's a possibility I'd thought that we haven't, we haven't reached that. And the other thing, and I'm sorry, I know this is another oddball part of this. There are also other remedies besides the ones you listed. Couldn't they move for compassionate release? Couldn't they move for home confinement? I mean, there are other remedies beyond habeas and civil rights actions. And how does that play in the government's view? I think so. I'll take the last question first. And then I'll double back to the case law surrounding conditions of confinement. Those are additional remedies that Congress has put in place for inmates to challenge. I mean, compassionate release is a way to explain that the circumstances are extraordinary and compelling. And there are a number of inmates who during the COVID-19 pandemic based on comorbidities and other reasons were successful in obtaining compassion. And I think that those, I think that those remedies add to the government's argument that habeas is not the proper forum here. And that unless the claims will spell speedier release, they do not belong in habeas. They simply are just channeled to other forums and to other under civil rights or compassionate release. So I think it adds to the government's argument. And then in terms of the case law surrounding conditions of confinement, I agree. I have not found any case that has applied the conditions of confinement in a way that the Supreme Court has sort of been signaling. And I think if you take a look at Sigler, there the inmates were in their cells, I believe for 23 hours a day. The lights were on for 24 hours of the day. They were in unsanitary conditions. They were not being fed. They didn't have hygiene. And the court again left, I mean, they weren't bringing a habeas claim, but the court mentioned it and again, left it to be open. And I think the last thing I'll say is that this court's case law dating back to, I think it's 1979 with Crawford has held that conditions of confinement claims are properly channeled to civil rights actions. So I think that the court could signal that there may be one day a set of circumstances where a prisoner cannot be detained anywhere in the federal government's custody, but that is not this case. Okay, going once, going twice. All right, we're gonna let her go. So thank you very much for your arguments. And Mr. Rowe will now give you two minutes for rebuttal. Thank you, Judge Nelson. A couple of points. First, you would be creating a circuit split if you held that this case that Wilson didn't govern here. Mr. Sands pleaded the exact same thing that was alleged in Wilson. It wasn't as ornate because he's pro se, but he said, quote, no set of conditions under the present circumstances could be constitutional. He said it was a challenge to the fact and duration of confinement and asked for immediate release from prison. That's exactly what they did in Wilson. Now, in Wilson, the court said, yes, there's habeas jurisdiction, but the release that you want is outlandish and you lose on the merits. There should not be a preliminary injunction because you can't possibly prove that claim that went to the merits. It didn't go to jurisdiction. That's what I'm asking for here. Second, if we followed it, we could do the same thing. I mean, you're asking to win the battle, but lose the war because if you're asking us to follow, you're saying we must create a circuit for your client to win Sands. We would have to create a circuit split with Wilson because we'd have to follow the first part of Wilson and reject the second, or we'd have to deny your relief on the merits. No, no, no. I'm not saying that you would create a circuit split if you said no habeas jurisdiction. However, in Wilson, the district court granted a preliminary injunction and said, plaintiffs, you're right. No set of circumstances would work here. I'm sorry, petitioners. You're right. But I thought you said that I hadn't focused on this part of the Sixth Circuit said, no, you can't get an injunction. The Sixth Circuit reversed the district court's grant of a preliminary injunction. Right, right. So if we follow Wilson, the Sixth Circuit, we would be denying your client relief. If you follow Wilson, no, if you follow Wilson, you would say there's habeas jurisdiction and then remand it for the district court to address the merits because they've never been reached. If I could make one, I see my time is going. I keep going. Yeah. There are 13 problems, as counsel has pointed out, listed in San's petition. Those have nothing to do with the remedy he wants. Remember, he has to prove an Eighth Amendment violation, which under Farmer versus Brennan is a really difficult thing to do. He has to show subjective deliberate indifference. So that's what those allegations are going to. And finally, let me answer the questions that you all were asking me at the beginning with this point. Release is on the Eighth Amendment menu. It is a possible remedy for an Eighth Amendment violation. So one can plead release and get into habeas jurisdiction that way. If, however, one were to plead, say, my cell was searched and the guards took all of my magazines and I want to bring a takings claim and I want release. No, that would be different because release is not on the takings remedies menu. Only just compensation is. So that's the limiting principle here. Release is a possibility. Could it ever happen? Imagine if there were an Ebola outbreak in prisons, all prisons, and it had a 50% fatality rate. I think the claim would be plausible then and it would be getting ahead of things for the court to say there is never a case where release could be possible when an Eighth Amendment habeas petition is brought. Okay, thank you to both counsel for your excellent arguments. We appreciate your professionalism and the way you presented it and helped the court analyze this case. The case is now submitted and we're adjourned for the day. Court for this session stands adjourned.
judges: NELSON, BADE, FORREST